IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division

**Case No. 8:06-CV-00986-EAK-AEP**

DALE J. MILLS and C. DIANE MILLS,

Plaintiffs,

v.

FOREMOST INSURANCE COMPANY,

Defendant.

_________________________________/

STATE OF MICHIGAN )
)
COUNTY OF KENT )

**AFFIDAVIT OF RONALD LIGOCKI**

I, Ronald Ligocki, do hereby depose and say as follows:

1. I am over twenty-one years of age and I make this Affidavit on personal knowledge.

2. I am currently employed in Tampa, Florida, as Field Claims Manager. In that position, I have responsibility for the handling of mobile home insurance claims by Foremost Insurance Company Grand Rapids, Michigan ("Foremost") policyholders. Prior to my current position, I served as a Claims Quality Assurance Senior Consultant and an Inside Claims Supervisor at Foremost. In my prior positions, I also had knowledge and responsibility regarding the handling of mobile home insurance claims by Foremost policyholders.

3. In my positions, I had and/or have access to and am knowledgeable about certain records prepared and maintained by Foremost in connection with mobile home insurance claims in the State of Florida. I also have access to and am knowledgeable about the policies and procedures used in adjusting claims by Foremost policyholders from 2004 to date.

4. This Affidavit is filed in support of Foremost's Memorandum in Opposition to Plaintiffs' Motion for Class Certification. It also supplements my prior affidavits submitted in support of Foremost's Motion for Summary Judgment. (DE 64-3 and 75-4).

5. With respect to Hurricanes Ivan, Frances, Jeanne and Charley, which struck Florida in 2004 (the "Florida Hurricanes"), Foremost had a policy regarding the issue of possible payment of a general contractor's overhead and profit ("GCO&P"). During and after the time period of the Florida Hurricanes, Foremost's policy with regard to payment of GCO&P was to pay GCO&P when it was reasonably necessary to effectuate the repair of a damaged mobile home. If GCO&P was reasonably necessary to effectuate the repairs, GCO&P costs were included in the determination of Actual Cash Value as defined in the Foremost policy. In some (but not all) cases, the reasonable "cost" to repair damaged property may include charges for overhead and profit made by a general contractor who may be reasonably needed to oversee the work of a number of subcontractors. If so, those costs should be included in the determination of Actual Cash Value. But, if the job did not call for the services of several subcontractors – and as a consequence it would not require an overseer – then an allowance for overhead and profit need not be included in the calculation of Actual Cash Value. Indeed, there are situations when multiple subcontractors may be

involved but an overseer would not be required and when multiple repairs to a mobile home do not require several subcontractors.

6. Foremost employed the following guidelines with regard to determining whether GCO&P *may* be payable on particular losses: (1) losses under $5,000 are rarely complex enough to include Overhead and Profit; (2) losses over $25,000 ordinarily are complex enough to include Overhead and Profit; and (3) losses in between can require close evaluation of the individual loss. These were guideline, not *rules* – and Foremost adjusters were free to use their judgment to evaluate whether or not to apply these guidelines to the circumstances of individual claims.

7. Foremost's general guidelines are also described in its claims bulletin on the issue: Claims Bulletin Number: 02-2 (Issue: Overhead and Profit). This Bulletin, dated July 2002, was in effect during the class period. The Bulletin (a true and accurate copy of which is attached as Exhibit A to Defendant's Notice of Filing Confidential Documents Under Seal and is a business record maintained by Foremost) provides:

> A fundamental insuring concept found in virtually all modern property insurance policies is Actual Cash Value. That is the company will calculate payment of covered losses generally as described in this policy definition:
>
>> Actual Cash Value means the cost to repair or replace property with new materials of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.[1]
>
> In some cases, the reasonable "cost" to repair the property includes overhead and profit charges made by a general contractor who is hired to oversee the work of a number of subcontractors. Those costs should be included in the determination of Actual Cash Value.

---

[1] This is the definition of Actual Cash Value that appears in the Mills' Policy (DE 16 at 9).

> But if the job does not call for the services of several subcontractors – and as a consequence it would not require an overseer – then an allowance for overhead and profit need not be included in the calculation of Actual Cash Value. Because it is sometimes difficult to determine whether the allowance should be made, consider the following guidelines: (1) losses under $5,000 are rarely complex enough to include Overhead and Profit; (2) losses over $25,000 ordinarily are complex enough to include Overhead and Profit; and (3) losses in between can require close evaluation of the individual loss.
>
> Bear in mind however that another fundamental principle of insurance is indemnity. The insured should be made whole for his/her loss subject to the terms of the policy. In recognition of that principle it is important that we understand and attempt to follow the generally accepted repair and billing practices in the area where the damage is to be repaired.
>
> In all cases, we must bring knowledge and judgment to the question of payment for overhead and profit so that our customers are treated fairly in accordance with the law.

8. Since 2003, Foremost has never adopted a rule or policy mandating that GCO&P must be included in the calculation of Actual Cash Value if a certain number of subcontractors or "trades" are involved. During the proposed class period, the decision as to whether GCO&P would be included in the calculation of Actual Cash Value was dependent on a close evaluation of the circumstances of an individual loss. Recognizing that every property, policyholder, and claim is unique, Foremost urged its adjusters to rely on their own training and experience, and to assess a variety of considerations in determining whether the services of a general contractor were reasonably necessary to effectuate the repair of a damaged home, including, but not limited to, local market conditions, the individual circumstances of each claim, the local practices of contractors and general contractors, and the availability of local mobile home repair specialists in the area of the claim.

9. In my experience regarding Foremost claims handling, each loss is different, and no two claims are identical. Each loss must be adjusted and reviewed on its own merits – *i.e.,* the policy form, the applicable state laws and regulations, the nature, type and extent of damages, and the nature and type of repairs. No one fact determines the repair cost of the loss. Indeed, GCO&P is no different than any other potential repair cost. As set forth above, if GCO&P is reasonably likely to be incurred, it is included in the estimate – just like roofing, drywall, or electrical costs are included in an estimate if they are reasonably likely to be incurred. Ultimately, the decision to include GCO&P or any other potential repair cost is an individual claim adjuster's decision as to what is necessary to indemnify a policyholder for a loss based upon all of the facts of each particular loss. This flexible approach is the best approach to address the individualized circumstances of each policyholder's loss.

10. In connection with this Action, Foremost produced 2,000 of the approximately 17,300 Florida Hurricane claim files arising from the 2004 Florida Hurricanes to the Plaintiffs. While Foremost has not reviewed the substance of all 2,000 files, a review of a small selection of those files by Foremost has revealed, consistent with my experience, that each claim file is unique. The claim file examples specifically identified herein are taken from the 2,000 files produced to Plaintiffs in this matter.

11. A review of the claim files demonstrates that Foremost did not apply a mechanical "three trades rule" with regard to the adjustment of GCO&P. With regard to Claim File No. 7355064, for example, Foremost not only paid GCO&P on the repairs to the mobile home, but also paid GCO&P on repairs to the insured's shed and to remove trees from the property.

12. During the relevant time period, the ""percentages" paid for a general contractor's overhead and profit, if paid, varied by time, location, and local custom. While payment of GCO&P in the amount of twenty percent (10% overhead; 10% profit) was not unusual when it is determined that such payment was due, these percentages were not applicable to all losses where GCO&P may be due. For example, Claim File No. 7412530 contains a repair estimate from "Upton Consturction [sic]," a non-party, which includes GCO&P at 10 percent and 2 percent. A true and accurate copy of the estimate is attached as Exhibit B to Defendant's Notice of Filing Confidential Documents Under Seal.

13. All of the policies implicated by this Action are mobile home policies. Based on my experience with regard to the handling of Foremost mobile home hurricane claims, mobile home repairs are frequently handled differently than repairs for traditional "single family" or "stick built" homes. Unlike traditional home repairs, mobile home repairs may be accomplished by a single mobile home repairperson or specialist, who can perform a wide array of repairs without the need of a supervising general contractor.[2] As these mobile home repair specialists can complete the repairs on their own, there would be no logical reason to pay for a general contractor to oversee the lone specialist. That is not to say that Foremost does not pay any overhead and profit – Foremost would clearly pay the mobile home repair specialist's overhead and profit inherently built into the specialist's own estimate. But

---

[2] Indeed, in my experience, some general contractors and/or subcontractors for traditional homes will not perform repairs on mobile homes because the work required for a mobile home is different. Mobile homes are constructed differently, particularly as to their foundation and plumbing. Each mobile home repair is unique and different, as there are many different mobile home manufacturers that manufacture many different makes and models of mobile homes. Mobile home manufacturers change their makes and models from year to year, and the age, make and model of the mobile homes affect the repairs required and the cost of those repairs.

Foremost would not pay for the cost (GCO&P) of a general contractor that is not reasonably likely to be needed. For example, with regard to Claim File No. 7355268, Foremost paid the majority of the claim for damage to the mobile home from a non-party estimate by "Creative Custom Aluminum," which did not include any amounts for GCO&P. A true and accurate copy of that estimate is attached Exhibit C to Defendant's Notice of Filing Confidential Documents Under Seal.

14. The review of Foremost claim files has also revealed that Foremost will unquestionably have unique defenses to certain class members' claims. For example:

- Claim File No. 7404251: The file reveals that the insured filed suit against Foremost and thereafter settled. Settlement and related doctrines will be defenses raised by Foremost. A copy of the settlement documents is attached as Exhibit D to Defendant's Notice of Filing Confidential Documents Under Seal.
- Claim File No. 7412530: The file reveals that the insured filed suit against Foremost and thereafter settled. Settlement and related doctrines will be defenses raised by Foremost. A copy of the settlement documents is attached as Exhibit E to Defendant's Notice of Filing Confidential Documents Under Seal.

Based on my experience, Foremost will likely have additional unique defenses to certain putative class members' claims, including the possible resolution of a claim in mediation, possible fraud or misrepresentation, and/or other issues dependent on the circumstances of an individual claim file. The entirety of these possible defenses cannot be ascertained without a review of all 17,300 claim files implicated by this Action.

15. Certain claim files constitute "total losses" – *i.e.,* the damage was such that the claim was declared a "total loss" and policy limits were paid by Foremost in connection with the loss. Mobile homes that suffer a total loss are not rebuilt. Rather, if a policyholder

suffers a total loss to a mobile home, the policyholder will likely purchase a replacement mobile home with the proceeds of the Foremost claim payment. Thus, with respect to a total loss, there would be no need for the services of a general contractor because the home is not rebuilt.

16. For these total loss claims, which are included in the 17,300 claim files implicated by this Action (and the 2,000 files produced to Plaintiffs), the inclusion and/or calculation of amounts for GCO&P is irrelevant as Foremost has paid policy limits and need not pay additional amounts beyond policy limits, including amounts for GCO&P. These claim files cannot rightly be considered part of the "class" in this Action as Foremost would not pay GCO&P beyond policy limits in connection with these files. The only way to identify these files accurately is by a review of all 17,300 claim files. Examples of total losses are Claim File Nos. 7378510, 7379401, 7357852 and 7359364.

17. A review of an estimate from a claim file (without review of the entire claim file) is not likely to be a reliable indicator of what actually happened with regard to the adjustment of a particular claim file. Indeed, the only way to determine the circumstances of, decisions made, and amounts paid in connection with the adjustment of an individual claim, including GCO&P, is by a review of each claim file in its entirety. For example:

- Claim File No. 7355268: contains an Xactimate estimate – but only for the replacement of the water heater and associated labor. There is a separate handwritten estimate from "Creative Custom Aluminum" for the majority of repairs to the mobile home and a notation in the file that insured had obtained a separate "quote" from "Cross Creek Management" to replace a shed. None of the estimates include amounts for GCO&P. Foremost paid to repair the mobile home and the shed based on all three items.

- Claim File No. 7378510: contains three Xactimate estimates. Two of the estimates were created by Foremost and the other was created by a non-party

general contractor. One of the Foremost estimates includes GCO&P, as does the general contractor's estimate. Ultimately, the mobile home was determined to be a total loss and policy limits were paid – rendering the issue of payment of GCO&P irrelevant.

18. Some claim files contain no estimate. Some contain Xactimate estimates (*i.e.*, estimates written using the Xactimate estimation software), while others contain estimates written on other estimating software. Still others contain handwritten estimates from contractors, including general contractors. While Xactimate estimates are the most common estimate format, it is not the only format that appears in Foremost claim files. Even the Xactimate estimates themselves vary widely in layout and substance. The files reveal that Foremost has paid claims based on all these different "forms" of estimate (including no formal estimate at all). For example:

- Claim File Nos. 7355935, 7357852 and 7359364: contain no estimates. The mobile homes were declared "total losses" and policy limits for each mobile home were paid.

- Claim File No. 7405554: contains a non-Xactimate estimate created by Foremost's independent adjuster. That estimate did not include GCO&P. The insured submitted estimates and invoices from a non-party which also did not include GCO&P.

- Claim File No. 7378479: contains a Foremost Xactimate estimate in the file – as well as two handwritten estimates and three handwritten invoices. None of these items included GCO&P.

- Claim File No. 7412530: contains five different estimates. Three are Foremost Xactimate estimates and two are non-Xactimate estimates from two non-parties.

- Claim File No. 7355268: contains a Foremost Xactimate estimate – but only for the replacement of the water heater and associated labor. There is also a handwritten estimate from a non-party and a notation in the file that the insured had obtained a "quote" from another non-party to replace the shed. None of the estimates include GCO&P.

19. The Mills' own claim file demonstrates the fact that the file must be reviewed in its entirety to figure out what happened regarding an individual claim. For example, the Mills' own file demonstrates that there may be multiple estimates issued with regard to a single claim: Xactimate estimates were issued by Foremost on September 8, 2004 and November 8, 2004 with regard to the Mills' claim. The Mills' claim also demonstrates that there may be payment decisions by Foremost that are not reflected on any estimate contained in a claim file. Foremost made the following payments to the Mills in connection with their claim:

| **Payments to Mills** | | | |
|---|---|---|---|
| Payment Date | Check No. | Coverage | Amount |
| 9/8/04 | 1635521 | Property Damage | $4,108.43 |
| 11/2/04 | 830589 | Property Damage | $1,355.30 |
| 3/9/05 | 1741669 | Property Damage | $1,792.75 |
| 5/10/05 | 1769070 | Property Damage | $1,565.32 |
| **TOTAL** | | **Property Damage** | **$ 8,821.80** |
| | | | |
| 2/15/05 | 1732222 | Contents | $827.89 |
| **TOTAL** | | **Contents** | **$827.89** |

The supplemental property damage payments of March 9, 2005 and May 10, 2005 are not reflected on any estimate in the Mills' file.[3] Furthermore, and as set forth in my prior affidavits in support of Foremost's Motion for Summary Judgment (as to Standing), Foremost's estimate with regard to the Mills did not contain any amounts for GCO&P. This was because the Foremost adjusters determined that a general contractor was not reasonably likely to be needed to accomplish the repairs needed on the Mills' mobile home. The Mills' claim was for less than $10,000 and the majority of the repairs were for repairing the carport,

3 Foremost made similar payments in Claim File Nos. 7405554 and 7381041. These payments would not have been revealed by a review of a single estimate in the file.

repairing the concrete driveway, and repainting the exterior of the mobile home. These external repairs were not reasonably likely to require the services of a general contractor.

20. Not all Xactimate estimates contain entries under the headings "adjustments for base service charges" and/or "recap by category with depreciation." As just one example, while these headings appear on the Mills' first estimate of September 2008 (DE 64-3 at Ex. B), they do not appear on the Mills' second estimate of November 2008 (DE 64-3 at Ex. C). Moreover, the line items listed under these headings do not necessarily constitute individual "trades." Instead, these line items represent the types of repairs necessary to restore the home. Depending on the individual circumstances of the damage and the necessary repairs, these types of repairs may require the services of a single repairperson or multiple repairpersons. With regard to mobile home repairs, multiple types of repairs may generally performed by a single mobile home repair specialist.

21. Foremost was acquired in 2000 by Farmers Insurance Exchange, Fire Insurance Exchange and Truck Insurance Exchange (collectively, "Farmers") when Farmers purchased Foremost Corporation of America, an insurance holding company. Subsequent to that acquisition, Foremost claims employees became employees of and were paid by Farmers Insurance Exchange. However, the day to day responsibilities of such individuals did not change.

22. Foremost and Farmers remain separate corporate entities, with their own policyholders, policies, and operating procedures. Farmers has not written any personal lines, including mobile home, insurance policies in Florida in 2004, or any other year.

23. Claims for Foremost policyholders were adjusted according to Foremost's unique policies and procedures. Indeed, Foremost maintained its own proprietary claims processing software (Compass) developed in-house by Foremost. Adjusters (whether they be Foremost adjusters, Farmers adjusters, independent adjusters, or others) are directed to adjust Foremost claims according to Foremost's unique policies and procedures – and not according to policies and procedures of any other company or entity.

**FURTHER AFFIANT SAYETH NAUGHT.**

Ronald Ligocki

I am an officer duly authorized to take acknowledgments, duly qualified by the State of MICHIGAN, hereby certify that Ronald Ligocki, this day acknowledged before me that he executed the foregoing Affidavit. He is personally known to me [X] or has produced drivers license #_____________as identification [ ] and did take an oath.

IN WITNESS WHEREOF, I hereunto set my hand and official seal in the City of CALEDONIA MICHIGAN this 8TH day of DECEMBER 2009.

Notary public, State of MICHIGAN

PATRICIA C. ROEMPKE

Print Notary Name

MY COMMISSION EXPIRES: 3-11-2015

PATRICIA C. ROEMPKE
NOTARY PUBLIC, STATE OF MI
COUNTY OF BARRY
MY COMMISSION EXPIRES Mar 11, 2015
ACTING IN COUNTY OF KENT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 8th day of January, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and it will be served electronically by the Court via the CM/ECF system on the attorneys so designated on the attached Service List, and by U.S. Mail on the non CM/ECF participants so designated on the attached Service List.

s/ Marcy Levine Aldrich
Attorney

## SERVICE LIST

**COUNSEL FOR PLAINTIFFS**

Justin G. Witkin
R. Jason Richards
Alystock, Witkin, Kreis & Overholtz, PLLC
803 N. Palafox Street
Pensacola, FL 32501
**Via CM/ECF**

Robert M. Giroux
Geoffrey N. Fieger
Fieger, Fieger, Kenney, Johnson & Giroux
19390 West Ten Mile Road
Southfield, MI 48075
**Via CM/ECF**

J. Craig Jones
Jones & Hill, LLC
131 Highway 165 S.
Oakdale, LA 71463
**Via CM/ECF**

Derrick Fisher
Law Offices of Derrick Fisher
4229 Mesa Vista Drive
La Canada-Flintridge
Pasadena, CA 91011
**Via CM/ECF**

**CO-COUNSEL FOR DEFENDANT**

Virginia B. Townes
Akerman Senterfitt
420 South Orange Avenue, Suite 1200
Orlando, Florida 32801
**Via CM/ECF**