UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

DALE J. MILLS and C. DIANE MILLS,

     Plaintiffs,

     v.                           Case No.: 8:06-cv-00986-T-EAK-AEP

FOREMOST INSURANCE COMPANY,

     Defendant.

_____/

## ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT

THIS CAUSE is before this Court on Plaintiffs', DALE J. MILLS and C. DIANE MILLS (hereinafter "the Millses"), Motion for Class Certification and Memorandum of Law in Support thereof. This Court undertakes a thorough examination of each factor found within Federal Rule of Civil Procedure 23(a) and 23(b) to determine whether class certification is appropriate in the instant case. For the reasons set forth below, the Millses' Motion for Class Certification and Memorandum of Law in Support is **DENIED**.

### A. Background

In February 2006, the Millses filed a class action complaint in Florida state court, which was ultimately removed to this Court. The complaint alleges that the Millses are Florida residents who own a mobile home that was insured by Defendant, FOREMOST INSURANCE COMPANY (hereinafter "Foremost"), under a "Mobile Home Insurance Policy" (hereinafter " insurance policy"). The mobile home of the Millses, and the homes of the putative class members, were damaged as a result of Hurricanes Frances, Jeanne, Ivan, and Charlie (hereinafter "2004 Florida Hurricanes"). Specifically, the

Millses' mobile home was damaged during Hurricane Frances on or about September 4, 2004. Subsequent to their claim being filed and paid by Foremost, the Millses suffered additional damage during hurricane Jeanne on or about September 26, 2004. Again, the Millses filed a claim with Foremost for their covered loss, and Foremost again issued a payment to the Millses for property damage to their covered mobile home. In addition to the claims filed as a result of Hurricanes Frances and Jeanne, the Millses also had two supplemental claims resulting from each aforementioned hurricane. The Millses do not allege that Foremost failed to pay on their submitted claims, but allege payment by Foremost of less than what they were entitled to under their insurance policy for their submitted claims. The Millses maintain that Foremost failed to compensate them for general contractor's overhead and profit (hereinafter "GCOP") and for state and local tax incurred on materials purchased by the Millses to repair or replace their hurricane damaged mobile home. The complaint also alleges that Foremost knowingly and unlawfully failed to pay overhead and profit, and taxes in Foremost's estimates of hurricane damaged losses and failed to inform the Millses about Foremost's intention not to pay overhead and profit and taxes under the policy. Upon the granting of Foremost's Rule 12(b)(6) motion, an appeal followed styled, *Mills v. Foremost*, 511 F.3d 1300 (11th Cir. 2008).

In *Mills*, 511 F.3d 1300, the Eleventh Circuit reversed this Court's ruling dismissing the action and held that GCOP is included within the "cost to repair or replace" and payment of GCOP is proper when a general contractor is reasonably likely to be needed in the replacement or repair of an insureds covered loss. *Id.* at 1308-1309. In addition, the Eleventh Circuit held that the granting of Foremost's Rule 12(b)(6) motion was premature as the class may still be certified under other class types found within Rule 23(b), even if this Court found predominance to be lacking. *Id.* at 1309. "We conclude that the district court's ruling suffers from several errors. First, a lack of predominance under *Rule 23(b)(3)* does not automatically bar class certification because the putative class representatives can still attempt to satisfy the requirements of *Rule 23(a)* and either *Rule 23(b)(1)* or *(b)(2)*. In holding that the Millses' claims were inappropriate for class action treatment, because common issues would not predominate, the

district court either: (1) failed to recognize that the Millses' complaint alleged that they satisfied each of the three grounds for class certification authorized in *Rule 23(b)*; or (2) confused common-issue predominance, which is required only for *Rule 23(b)(3)* class actions, with the *Rule 23(a)* requirements that all actions must satisfy. *Id.* at 1309. The Eleventh Circuit in *Mills* also stated that the district court would need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified. *Id.* at 1309. On July 8th, 2010, this Court held an evidentiary *Daubert* hearing in order to provide both parties with an opportunity to be heard and express their respective parties' positions as it related to Foremost's Motion to Strike Expert Declarations.

In conclusion of its order reversing this Court's ruling dismissing the Millses' class suit, the Eleventh Circuit expressed no ultimate opinion in regards to whether or not the class was appropriate for certification. *Id.* at 1310. This Court will now proceed with a complete and thorough examination of not only all Rule 23(a) prerequisites and all Rule 23(b) class types, but also analyze predominance under Rule (b)(3) in a separate, distinct section as to avoid any further confusion.

In regards to the payment of GCOP, the Eleventh Circuit clearly established a reasonably likely standard. "The Millses would not be entitled to receive payment for any type of cost charged by a general contractor without showing that they would be **reasonably likely** to need a general contractor for the repairs in issue. Thus, if the estimate of the cost to repair is by a general contractor that lists labor, materials, overhead, and profit, the question is the same for all of these items: whether it is **reasonably likely** that the policy holder would incur these costs in making the repairs." *Id.* at 1306. (emphasis added). "Our conclusion in this regard comports with the weight of authority on the issue. A majority of courts considering the question under similarly drafted insurance policies has determined that an actual cash value payment included a general contractor's overhead and profit charged in circumstances where the policyholder would be reasonably likely to need a general contractor in repairing or replacing the damaged property in issue. *Mills* at 1306. *See Tritschler v. Allstate Ins. Co., 213 Ariz. 505, 144 P.3d 519, 529 (Ariz. Ct. App. 2006); Salesin v. State Farm Fire & Cas. Co., 229 Mich. App. 346, 581 N.W.2d 781,*

3

*789-91 (Mich. Ct. App. 1998); Gilderman v. State Farm Ins. Co., 437 Pa. Super. 217, 649 A.2d 941, 945 (Pa. Super. Ct. 1994).* Thus, whether or not the Millses are entitled to payment of GCOP in the repair or replacement of their covered loss will be determined by whether or not it was reasonably likely that the Millses would incur the cost of a general contractor.

The Millses maintain that each individual within the proposed class definition was a Foremost insured who suffered a covered loss to his or her mobile home and, according to the estimates prepared by Foremost, the identified repairs reasonably required the services of a general contractor based upon the fact that each repair required the utilization of three or more trades. Thus, the Millses seek to recover an allowance for GCOP that was not paid by Foremost for the damage to their covered mobile home as a result of the 2004 Florida Hurricanes. The Millses basis for such an allowance is that the custom and practice in the insurance industry in Florida, and the rest of the United States at the time plaintiffs and each class member's claim was adjusted and paid by Foremost, was to include ten percent (10%) overhead and ten percent (10%) profit in the insurer's estimates on all claims in which three or more trades were used to complete repairs. This is what the Millses refer to as a "three trades rule." It is undisputed that a "three trades rule" does not expressly appear in the insurance policy language. Instead, the Millses advance a "three trades rule" theory of liability on the basis that expert witnesses' depositions and testimony establish that it is the custom and practice within the insurance industry to pay GCOP where the estimate shows three trades or more are required to complete the repairs.

The Millses, individually and on behalf of others similarly situated, move this Court to certify the following class:

> "All mobile home insurance policyholders of Foremost in the State of Florida who, between August 1, 2004 and the present, made a claim for damage to their mobile home caused by or arising out of the Florida hurricanes which was insured by Foremost, on which claim Foremost wrongfully failed to pay and include in the actual cash value loss payment to the policyholder/claimant, overhead and profit reasonably likely to have been incurred by the policyholder/claimant in connection with the repair or replacement of the hurricane damaged real property."

4

The Millses' class certification motion is made on the grounds that the class is so numerous as to make joinder of all members impracticable, there exist common questions of law and fact common to the class, that claims and defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the interest of the class. Additional grounds on which the Millses' motion is made are that the class is ascertainable and that there is a well-defined community of interest among class members. Furthermore, the Millses contend that the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for the party opposing the class, and/or that defendants acted in a way common to all class members making injunctive relief appropriate for the class as a whole, and/or that the common questions of law and fact predominate over the individual issues and the class method is superior to other methods of resolving the liability and damage issues. This Court will now address each required element under Rule 23 as set forth below, preceded by a short general synopsis of the requisite elements of class certification under Rule 23(a) and (b).

## B. Discussion

### I. General Overview of FRCP 23(a) and FRCP 23(b)

The district court is given great discretion when deciding questions of class certification. *Cooper v. Southern Co.*, 390 F.3d 695, 711 (11th Cir. 2004) (citing *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1386 (11th Cir. 1998)). A class action, "may only be certified if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23 are satisfied." *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 161 (1982); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009). This analysis does not permit courts to be "generous or forgiving" of failures of proof or to engage in speculation as to Rule 23's requirements. *Vega*, 564 F.3d at 1269.

The prerequisites of class certification are that: (1) the class is so numerous that joinder of all member is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *Fed. R. Civ. P. 23(a)*. These prerequisites are commonly referred to as numerosity, commonality, typicality of claims, and adequacy of representation. *Amchem Product, Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *In re Amerifirst Securities Litigation*, 139 F.R.D. 423, 427-29 (S.D. Fla. 1991); *McFadden v. Staley*, 687 So. 2d 357, 358 (Fla. 4th DCA 1997). Once all of Rule 23(a) requirements have been met, the plaintiffs must also meet at least one of the class types under Rule 23(b). It is the plaintiff that bears the burden of showing that the proposed class meets every requirement of Rule 23(a) and at least one of the Rule 23(b) acceptable class types. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). Further, it is wise for a district court to ascertain early on whether the plaintiff has adequately defined the proposed class such that a full examination of the Rule 23(a) and (b) requirements is even necessary (or, for that matter, even possible). *Clausnitzer v. Fed Express Corp.*, 248 F.R.D. 647, 655 (S.D. Fla. 2008). Lastly, and as a matter of course, the district court must determine that at least one of the named class representative has Article III standing to raise each class subclaim before the court can undertake any formal review of the Rule 23(a) prerequisites. *Murray v. Auslander*, 244 F.3d 807, 810-811 (11th Cir. 2004). This Court will now analyze class certification under FRCP 23(a) and (b) below. In regards to standing, the Eleventh Circuit has held that the Millses have established standing both individually and on a class wide basis. "The two claims that the Millses have attempted to raise on behalf of a class are identical. Therefore, we conclude that with respect to each class claim, the Millses have standing not just individually, but also as putative class representatives." *Mills* at 1307.

## II.    FRCP 23(a)(1): Numerosity

In determining whether a class is so numerous as to make joinder of all members impracticable, the court should examine many factors, including the size of the class, the ease of identifying its numbers

and determining their addresses, the facility of making service on them if joined, and their geographic dispersion. *Kilgo v. Bowman Transp.*, 789F.2d 859, 878 (11ᵗʰ Cir. 1986) (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5ᵗʰ Cir. 1981))[1]. As a general rule, however, more than forty class members will be adequate to meet the numerosity requirement, while fewer than twenty-one class members will be inadequate, with certification in cases where the class number in between twenty-one and forty depending upon a consideration of the factors noted above. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11ᵗʰ Cir. 1986). While a plaintiff need not show the exact number of members that will eventually be included in a proposed class, "mere allegations of numerosity are insufficient to meet this prerequisite." *Evans v. U.S. Pipe and Foundry Co.*, 696 F.2d 925, 930 (11ᵗʰ Cir. 1983).

As a result of the 2004 Hurricanes in Florida, defined as Hurricanes Frances, Jeanne, Ivan, and Charlie, the Millses allege Foremost adjusted 17,300 claims in respect to their insured mobile home policy holders who suffered damage. One of the Millses purported expert witnesses, Kermith Sonnier, reviewed 500 claims files resulting from the 2004 Florida hurricanes and determined that 435 or 87% involved three trades or more, and out of those 435 claims, Foremost did not pay GCOP on 374 or 86%. (Dkt. 116-17)[2]. According to Sonnier, when the percentage of failed GCOP payments, or 86%, is applied to the 17,300 claims adjusted by Foremost, the approximate class size is 13,000. The Millses have submitted 13,000 as an estimate of how many potential class members exists. This Court notes that Sonnier has attached numerous declarations, spreadsheets, and summaries, of which the most current analysis remains flawed and the citations referring to these documents fail coincide with the CM/ECF Document and Exhibit citation method, making it impossible to fully grasp which document the Millses are referring too.

Foremost does admit that there are 17,300 claims arising from the 2004 Florida Hurricanes. However, Foremost contends that the putative class number should be comprised of some disputed subset

---

[1] Former Fifth Circuit decisions rendered before October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11ᵗʰ Cir. 1981)(en banc).

[2] Sonnier's finding were erroneous as will be addressed below; errors still remain.

of those 17,300 claims, which the Millses have failed to quantify. Foremost argues that Sonnier's limited and unreliable data does not support class certification and is unsupported by statistical validity. As the *Cox* court established, the general rule is forty or more class members are adequate to make joinder impracticable, and in the instant case, the purported class definition and Sonnier's analysis indicates a number much greater than forty. While the Millses have not been able to precisely state the exact number of potential class members, they have established an estimate supported with purported expert testimony. Assuming that a "three trades rule" applies for purposes of analyzing Numerosity, the method in which Sonnier extrapolated an estimate of potential class members would be sufficient to establish numerosity. Although his findings are erroneous, assuming the class is a fraction of what purported expert witness Sonnier has estimated, the number of class members would likely still be in the thousands, and as such, this Court finds that Rule 23 (a)(1) Numerosity to be sufficiently established.

### III.    FRCP 23(a)(2): Commonality

Commonality requires that there be some legal or factual issues "susceptible to class-wide proof." *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Murray*, 244 F.3d at 811). In every properly certified class action, then, there must be at least one issue, the resolution of which will affect all or most of the proposed class members. *Id.* Only one issue is required, though, and the existence of even one common question of law or fact is "sufficient to satisfy the low hurdle of Rule 23(a)(2)." *Id.*; *see Vega*, 564 F.3d at 1268 (describing the 23(a)(2) prerequisite as a "relatively light burden"). Ultimately, the burden on the plaintiff to show commonality is a low one and, unlike the predominance requirement of Rule 23 (b)(3), will often be satisfied in cases of form contracts such as insurance policies, so long as the policy documents are uniform or largely the same throughout the case. *See Id.*; *see also Buford v. H&R Block, Inc.*, 168 F.R.D. 340, 349 (S.D. Ga. 1996 (noting that "Rule 23(a)(2) requires only that the class movant show that a common question of law or fact *exists*; the movant need not show...that the common questions *overwhelms* the individual questions of law or fact" (emphasis in original)), *aff'd*, 117 F.3d 1433 (11th Cir. 1997). In assessing commonality, it is important that the certifying court conduct

8

a commonality analysis separate from the predominance analysis for Rule 23(b)(3) actions. *Vega*, 564 F.3d at 1268 (explaining that "conflat[ing] the commonality determination with a review for predominance pursuant to Rule 23(b)(3)" is "a clear misreading of Rule 23" and ground for reversal).

In the instant case, the Millses advance several common questions of law or fact common to all class members. Namely, whether Foremost was obligated, under the mobile home insurance policy, to compensate plaintiffs and the class members an amount for GCOP where Foremost's estimate of damage showed that they would be reasonably likely to need a general contractor in repairing or replacing their damaged mobile home? Setting aside the difficulties inherent in determining whether the use of a general contractor was reasonably likely in the repair or replacement of the covered loss, the withheld payment of GCOP to Foremost policy holders gives rise to a finding of commonality. Further, the Millses aver that this common question can be answered by a common question of fact, namely: Is it the custom and practice in the insurance industry to pay overhead and profit where the insurer's estimate reflects that the repair/replacement of the damage will require the use of three trades or more? The Millses assert several other additional common questions of law and fact, including the following: (1) All claimants had valid and enforceable mobile home policies with Foremost covering wind damage during the relevant period and had paid their respective premiums; (2) All claimants have the identical loss settlement provision in their mobile home policy; (3) All claimants have the identical definition of "actual cash value" in their policy; and (4) All claimants were denied benefit of GCOP.

Whether or not a general contractor was reasonably likely to be needed in the repair or replacement of the insureds covered loss presents the additional issue of how to determine whether a general contractor being needed was reasonably likely. Foremost asserts that due to individualized proof needed commonality has not been met and this Court ultimately agrees that individualized proof is a problem; however, Foremost's reliance is misplaced. Foremost relies on *Brooks v. S. Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 57-58 (S.D. Fla. 1990), as the basis for their individualized proof argument. In *Brooks* the court found commonality not to exist because, "legally, plaintiffs must look to the law of no fewer than

9

four states in order to determine the existence of each individual contract." In the instant case the purported class definition establishes the law of only one state, Florida, to govern the underlying insurance policy issues, and thus Foremost's reliance on *Brooks* is improper. Furthermore, some of the plaintiffs in *Brooks* alleged oral representations at the time of entering into their alleged contracts and/or oral modifications of their written contracts. *Id.* at 57. In the instant case, all putative class members had a written policy with Foremost and no allegation of oral modifications has been made, nor is the law of any other state alleged to be controlling in regards to the underlying insurance policy. In the instant case, the issue of individualized proof is a concern shared by this Court, but may properly be addressed under Rule (b)(3) analysis. Thus, setting aside the issue of individualized proof, this Court will presume that commonality has been met for the purpose of resolving the remainder of issues presented in the Millses' Motion for Class Certification and Foremost's Opposition thereto.

IV.    **FRCP 23(a)(3): Typicality**

A class may only be certified if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Fed. R. Civ. P. 23(a)(3).* "The claim of a class representative is typical if "the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Williams,* 568 F.3d at 1357 (*quoting Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984)). Essentially, the purpose of the typicality review is to determine whether there is a "sufficient nexus" between the claims of the class as a whole and the claims of the named representatives of that class. *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1322 (11th Cir. 2008). In the end, the typicality requirement is easily met so long as there is some relationship between the defendant's allegedly wrongful actions, the proposed representative's injury, and the alleged injuries of the class as a whole. *Kornberg,* 741 F.2d at 1337. Although the issues of commonality and typicality are separate inquiries, proof of each also tends to merge. *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th Cir. 1996) (internal punctuation and citation omitted). Again, setting aside the manifest problems of how to determine whether a general contractor being needed was

reasonably likely, thus following the standard as established by the Eleventh Circuit and not the "three trades rules" argued by the Millses, this Court will presume the Millses have carried their burden for the purpose of resolving the remainder of issues presented. A nexus between the Millses and the class they seek to represent is that both are attempting to recover GCOP from Foremost and both are relying on the identical insurance policy. The Millses and the prospective class members were all Foremost insureds who did not receive GCOP in regards to their covered property loss and both the Millses and the class members are commencing suit to recover, what they allege, is a wrongfully withheld payment. Both the Millses and the putative class members seek to recover the same percentage of withheld GCOP and both advance the same theory for recovery, a "three trades rule."

## V.     FRCP 23(a)(4): Adequate Representation

The final prerequisite of Rule 23(a) is that the representative parties be such that "will fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)(4)*. The reason for this requirement lies in due process: because the interest of absentee class members may be affected by the outcome of a class action proceeding, the adequacy requirement is designed to ensure that those absentees' interests are protected even in their absence. *Falcon*, 457 U.S. at 157 n. 13; *see Hansberry v Lee*, 311 U.S. 32, 42 (1940). Essentially, the adequacy analysis involves "two separate inquiries: (1) whether any substantial conflict of interest exists between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Grimes v. Fairfield Resorts, Inc.*, 331 Fed. Appx. 630, 632 (11th Cir. 2007) (quoting *Valley Drug*, 350 F.3d at 1189). In the absence of a conflict of interest, the second prong of the Rule 23(a)(4) requirement is satisfied "where the class is represented by competent and zealous counsel." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987). In regards to the adequacy of representation as it pertains to the Millses, this Court does not find any substantial conflict of interest to exist between the representatives and the class. This Court does not find any substantial conflict among the Millses and those they seek to represent. Again, this determination is made under the

presumption that determination of what is reasonably likely would not create individual inquiries thus requiring individualized proof and ultimately creating potential adequacy and typicality issues.

Now turning to the second inquiry, that is, whether the class counsel representative(s) will adequately prosecute the action. The Millses have assembled attorneys, to represent themselves and the class, specializing in several different applicable practice areas for the instant action. This Court was unable to verify the sources cited by the Millses in regards to the adequacy of representation as the Millses have chosen to use a form of citation in which this Court is unfamiliar and cannot readily locate the sources in which the Millses refer. It appears this is the same citation method the Millses have chosen to use in reference to the Sonnier spreadsheets and summaries. However, for the purposes of analysis, this Court will presume that the summations of the sources cited by the Millses are correct as the point is ultimately moot as certification fails on other grounds.

According to the Millses account of the affidavit of Jason Richards, plaintiff's attorneys, Aylstock, Witkin, Kreis & Overholtz, currently are serving as counsel for other complex litigation matters in addition to the instant case. The Millses co-counsel, Robert Giroux, is a member of a firm that specializes in trial litigation. Derrick Fisher, another one of Millses co-counsel, specializes in insurance bad faith law and has experience dealing with insurance settlements. Given the experience and specialties of the class counsel representatives, this Court finds the class representation to be adequate in regards to class certification. This Court finds the adequacy of representation of both the Millses, as it relates to the putative class members, and the adequacy of representation of counsel, in representing both the Millses and the putative class members, to be in accordance with Rule 23(a)(4) and therefore is established.

## C.  The Rule (b) Types Requirements

In order to have an action certified as a class action under Rule 23, a putative class must meet all requirements of Rule 23(a) and at least one of the types of actions under Rule (23)(b). As stated above, all requirements of Rule 23(a) must be met, while only one of the class types under Rule 23(b) must be met

in order for a class to be certified. Nonetheless, this Court will examine all four class types under FRCP 23(b) in which a class may be certified. For all the reasons set forth below, this Court finds that certification under Rule 23(b) to be contrary to existing law and unmanageable. The Millses Motion for Class Certification is denied as no Rule 23(b) class types are appropriate in the instant case.

I.      **FRCP 23(b)(1)(A): Risk of Incompatible Standards**

Rule 23(b)(1)(A) permits the certification of a class when the denial of class certification would create inconsistent or varying adjudications and thereby establish incompatible standards of conduct for the party opposing the class. *Fed. R. Civ. P. 23(b)(1)(A)*. While the "identity of judicial action that creates 'inconsistent or varying' adjudications is not clear," *In re Dennis Greenman Secs. Litig.*, 829 F.2d 1539, 1545 (11th Cir. 1987), the Eleventh Circuit recently held that "the risk that judicial action will create incompatible standards of conduct is low when a party seeks compensatory damages, [so] only actions seeking declaratory or injunctive relief can be certified under Rule 23(b)(1)(A)." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1195 (11th Cir. 2009). "We held in *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 n. 7 (11th Cir.2000), that Rule 23(b)(1)(A) certification was improper when plaintiffs requested both compensatory damages and injunctive relief. In light of *Cohen*, the district court noted that Rule 23(b)(1)(A) certification would appear to be improper. We agree." *Babineau* at 1195. Therefore, as per *Babineau*, certification is improper if plaintiff requests both money damages and injunctive relief. *Id.* (citing *Cohen v. Off. Depot, Inc.*, 204 F.3d 1069, 1078 n. 7 (11th Cir. 2000)); *Greenman*, 829 F.2d at 1545 (holding "that only actions seeking declaratory or injunctive relief can be certified under [Section b(1)(a)]"). In the present case, the Millses do seek injunctive and declaratory relief, but they also seek compensatory damages. Specifically, the Millses seek to recover withheld payments Foremost failed to pay in respect to GCOP arising out of the 2004 Hurricanes. Therefore, certification under Rule 23(b)(1)(a) is improper.

## II.    FRCP 23(b)(1)(B): Limited Fund

As the Millses' Motion for Class Certification does not seek certification under Rule 23(b)(1)(B), this Court will not address class certification as it pertains to this rule.

## III.    FRCP 23(b)(2): Injunctive or Declaratory Relief

Certification of a class may also be appropriate where, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Fed. R. Civ. P. 23(b)(2)*. "Monetary damages are legal relief that can only be awarded in Rule 23(b)(2) class action when the damages sought are *incidental* to the claims for equitable and declaratory relief." *Williams*, 568 F.3d at 1359 (quoting *Cooper*, 390 F.3d at 720) (emphasis added). The determination of the point at which the monetary relief sought by the plaintiff class becomes incidental to the injunctive relief is made with case-by-case, ad hoc analyses. *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1340 (11th Cir. 2006).

In the case where the district court allows certification under Rule 23(b), certain principles will guide the availability of compensatory damages. *Murray*, 244 F.3d at 812. First, money damages must be such that they "flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *Id.* (adopting the holding of, and quoting, *Alison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (emphasis original). Next, the monetary damages "should be only those to which class member automatically would be entitled once liability to the class (or subclass) as a whole is established...[because] liability for incidental damages should not...entail complex individual determinations." *Id.* Essentially, the determination of certification turns on whether the plaintiff class is actually seeking individual money damages under the guise of a class action, or whether, as per Rule 23(b)(2), the plaintiff class truly seeks a "group remedy" for its alleged injuries. *Id.* A class certified under Rule 23(b)(2) may recover monetary relief in addition to declaratory and injunctive relief, "at least where the monetary relief does not predominate." *Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir.

1997); *see also Advisory Comm. Note to Fed. R. Civ. P. 23(b)(2)* (noting that 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.").

As stated above, the Millses seek to recover compensatory damages resulting from the withheld payment of GCOP arising out of the 2004 Florida Hurricanes. While a group remedy in the form of an injunction may be one of the basis on which the Millses seek class certification, the Millses predominate relief remains to be monetary damages. Furthermore, the Eleventh Circuit on appeal has already provided declaratory relief in holding that GCOP is subsumed within the "cost to repair or replace" within the insurance policy. "For several reasons, we agree that a contractor's overhead and profit charges are included within the 'cost to repair or replace.'" *Mills* at 1304. As cited above, "Our conclusion in this regard comports with the weight of authority on the issue. A majority of courts considering the question under similarly drafted insurance policies has determined that an actual cash value payment included a general contractor's overhead and profit charged in circumstances where the policyholder would be reasonably likely to need a general contractor in repairing or replacing the damaged property in issue." *Mills* at 1306. (*See Tritschler v. Allstate Ins. Co., 213 Ariz. 505, 144 P.3d 519, 529 (Ariz. Ct. App. 2006); Salesin v. State Farm Fire & Cas. Co., 229 Mich. App. 346, 581 N.W.2d 781, 789-91 (Mich. Ct. App. 1998); Gilderman v. State Farm Ins. Co., 437 Pa. Super. 217, 649 A.2d 941, 945 (Pa. Super. Ct. 1994).* Thus, a declaration that GCOP is included within the actual cash value definition of the insurance policy has already been issued by the Eleventh Circuit.

In further support of the finding that the Millses' predominate source of relief is monetary, found within their Motion for Class Certification, is that the only class type given express attention is a class type under (b)(3). The other two class types in which the Millses seek class certification, (b)(1)(A) and (b)(2) are mentioned briefly at the onset of the Millses Motion for Class Certification and fail to appear again, while (b)(3) is given in excess of five pages, including its own distinct heading. The lack of attention by the Millses to the class types under Rule (b)(1)(A) and (b)(2) are further evidence that the Millses predominate relief sought is monetary. The Millses devoted the majority of their motion for class

15

certification arguing predominance, superiority, and manageability, all considerations that only factor into a Rule (b)(3) class. All of this leads the court to find that the predominate relief sought in the instant case is monetary. The monetary relief sought clearly predominates over any injunctive or declaratory relief as the main allegation by the Millses is that Foremost wrongfully withheld payment of GCOP in regards to the 2004 Florida Hurricanes. As such, this Court rules that certification under FRCP 23(b)(2) is improper as the predominate relief sought by the Millses is monetary damages. This Court will also note that the declaratory or injunctive relief sought by the Millses is purely speculative by this Court, as the Millses have failed to state with particularity the declaratory or injunctive relief they seek within their Motion for Class Certification.

### IV.    FRCP 23 (b)(3) Money

A class action may be maintained where the court finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Fed. R. Civ. P. 23 (b)(3)*. While the factors listed in Rule 23(b)(3)(A)-(D) are helpful in assessing predominance and superiority, the "consideration of every factor...is [not] strictly mandatory in every case." *Vega*, 564 F.3d at 1278 n. 19. Nonetheless, "a complete failure to address these factors or any other pertinent consideration when conducting a Rule 23(b)(3) inquiry is an abuse of discretion." *Id.* This court will first examine predominance and superiority in regards to the class, followed by an analysis of the pertinent Rule 23(b)(3)(A)-(D) factors regarding predominance and superiority, namely manageability.

### a.    Predominance

The essential consideration in weighing predominance for Rule 23(b)(3) certification is whether the individual plaintiffs will need to introduce individualized evidence or advance individualized legal arguments in order to establish "most or all of the element of their individual claims," in which case certification is inappropriate. *Vega*, 564 F.3d at 127 (quoting *Klay*, 382 F.3d at 1255). More specifically,

in determining whether a proposed class meets the requirements for predominance, "a district court must examine not only the defendant's course of conduct towards the class members, but also the class members' legal rights and duties." *Sacred Heart Health Sys. V. Humana Mil. Healthcare Servs.*, 601F.3d 1159, 1170 (11th Cir. 2010).

In the case of a Rule 23(b)(3) certification motion based upon a breach of contract, it is well to remember that "claims for breach of contract are peculiarly driven by the terms of the parties' agreement, and common questions rarely will predominate if the relevant terms vary in substance among the contracts." *Sacred Heart Health Sys.*, 601 F.3d at 1171. Even the existence of a form contract, however, "do[es] not guarantee predominance if individualized extrinsic evidence bears heavily on the interpretation of the class members' agreements," such as when "a defendant raises substantial affirmative defenses to breach." *Id.* at 1176-1177. Moreover, if damages across the class cannot be computed by "some formula, statistical analysis, or other easy or essentially mechanical method[ ]," that too may be sufficient to preclude a finding of predominance. *Id.* at 1179.

On appeal in *Mills*, the Eleventh Circuit established a clear standard in which GCOP was to be paid, that is, in circumstances where the policyholder would be reasonably likely to need a general contractor in repairing or replacing of their damaged property. *Mills* at 1306. Thus, in order to determine whether or not a policy holder is entitled to the withheld payments, it is likely that the putative class plaintiffs will need to introduce evidence specific to their claim in order to argue that the use of a general contractor was indeed, reasonably likely. As the Eleventh Circuit has not established a "three trade rule" standard as the Millses have averred, the likelihood that a putative class member plaintiff will need to argue what was reasonable under the circumstances given his or her specific claim, creates a lack of predominance in the present action as that argument may be different from a fellow putative class member.

Furthermore, as Foremost has pointed out, there exist defenses to liability that will be raised on an individual basis. Some of the possible defenses to be raised may be overpayment of a claim by Foremost regarding a particular claimant, or fraud by the claimant in regard to their claim for property damages as a result of the 2004 Florida Hurricanes, or whether the appraisal provision within the policy was invoked, or whether a claim was a total loss in which policy limits would have been paid by Foremost and the homeowner would purchase a replacement mobile home as compared to repairing their previous mobile home. In addition to the potentially individualized defenses that may be raised, there exists a concern from this Court as to how a reasonably likely standard will be able to be determined on a class-wide basis. While the Millses advance a "three trades rule" in order to determine whether or not a general contractor was reasonably likely to be needed, this Court finds issue with such a rule. Even if a "three trades rules" were to be employed as the standard in the instant case, the application of such a rule still does not fully answer the question of whether or not a general contractor being needed was reasonably likely.

Potentially, one putative class member plaintiff may argue that it was reasonable under the circumstances that a general contractor would have been needed to repair or replace their covered mobile home from damage cause by the 2004 Florida Hurricanes because three or more trades were needed, and under the custom and practice within the insurance industry, the "three trades rules" applies. This is precisely the argument raised by the Millses. A fellow class member plaintiff, who also suffered damage as a result of the 2004 Hurricanes, may argue that it was reasonably likely a general contractor would have been needed to repair or replace his or her covered loss because, although only one trade was needed, the extent of the damage was severe and complex thus making it reasonably likely a general contractor would be needed. Keeping with the hypothetical, the first class member claimant would receive GCOP under the Millses' "three trades rule" while the second hypothetical class member claimant would not receive GCOP. While it may have been reasonably likely under the circumstances that a general contractor would be needed to repair or replace the second class member's covered mobile home, due to extensive damage within one trade, based on the second hypothetical class member plaintiff; lack of the

18

trades required under a "three trades rule" for payment of GCOP, there is no payment of GCOP. Thus, even though the second class member plaintiff's extensive damage made it reasonably likely under the circumstance that a general contractor would be required to repair or replace the damaged mobile home; the second claimant would none the less not be entitled to GCOP under a "three trades rule." Even if the second claimant had damage requiring two trades, there would still be no payment under the "three trades rule", while it quite possibly could have been reasonable under the circumstances that a general contractor would be required. The above example provides as an illustration of how the use of a "three trades rule" will still leave the question of whether a general contractor was reasonably likely to be needed in the repair or replacement of a class member's damaged mobile home in the balance, and if a "three trades rule" were to be followed, then predominance certainly does not exist as the above example demonstrates. For the interests of the first hypothetical class member and the interests of the second hypothetical class member diverge.

Moreover, if damages across the class cannot be computed by "some formula, statistical analysis, or other easy or essentially mechanical method[]," that too may be sufficient to preclude a finding of predominance. *Sacred Heart*, at 1179. In the instant case, the raising of individualized defenses, in addition to the likely claim by claim file review, shows a lack of predominance. In essence, one putative class members will face an asserted defense by Foremost that the loss payment issued to the insured was in excess while another putative class member will face the defense that the insured fraudulently submitted their claim, while another will face the defense that because the mobile home was a total loss a general contractor was never needed. In light of such a scenario, the putative class members while having similar interests, would both need to set forth separate and distinct extrinsic evidence in order to refute the defenses raised by Foremost. Such individualized proof leads this Court to find the lack of predominance in the instant case.

It should be noted that several courts have reached the same conclusion, that is, post-hurricane claim adjustments are not appropriate for class treatment due to the individualized facts of each claim. *See*

19

*Jones v. Nat'l Sec. Fire & Cas. Co.*, 2006 WL 3228409 (granting motion to dismiss class allegations concerning deficiencies in the payment of overhead and profit on Hurricane Rita claims), *aff'd, John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443 (5th Cir.2007); *Aguilar v. Allstate Fire & Cas. Ins. Co.*, 2007 WL 734809, *1, 3 (E.D.La.2007) (granting motion to strike class allegations in Hurricane Katrina case alleging "below market unit pricing and nonpayment or intentional underpayment of industry standard items" holding that these allegations would "require an intensive review of the individual facts of each class member's damage claim"); *Spiers v. Liberty Mut. Fire Ins. Co.*, 2006 WL 4764430, *2 (E.D.La.2006) (striking class allegations in Hurricane Katrina case alleging a pattern and practice of bad faith and improper claims handling because "individual questions pertaining to each class member overwhelm any arguably common issues"); *Guice v. State Farm Fire & Cas. Co.*, 2006 WL 2359474 (S.D.Miss.2006) (denying class certification with respect to "slab cases" in Mississippi because the resolution of those cases would depend on the facts of each individual loss and certification would be "inconsistent with the requirements of due process"); *Henry v. Allstate Ins. Co.*, 2007 WL 2287817, *4 (E.D.La.2007) (striking class allegations that Allstate used a program to produce artificially depressed claim values with the intent to underpay their insureds' claims because "proving a questionable pattern and practice of undervaluing claims will require an intensive review of the individual facts of each class member's damage claim"); *see also Comer v. Nationwide Mut. Ins. Co.*, 2006 WL 1066645 (S.D.Miss.2006); *Caruso v. Allstate Ins. Co.*, 2007 WL 2265100 (E.D.La.2007) (granting motion to strike class allegations in Hurricane Katrina case involving Valued Policy Law claims).

### b. Superiority and Manageability

If the district court does not find that the predominance requirement is met, it must still inquire as to the second prong of Rule 23(b)(3)—namely whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Fed. R. Civ. P. 23(b)(3)*. The superiority inquiry will ultimately consist of the court determining whether a class action is an efficient and manageable method of dispensing with the issues to be litigated, and a comparison of the burdens of a

class-action suit with those that would obtain if the court required class-members to pursue their claims individually. However, the predominance analysis has "a tremendous impact on the superiority analysis...for the simple reason that, the more common issues predominate over individualized issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Williams*, 568 F.3 at 1358 (*Klay*, 382 F.3d at 1269). In this way, if a district court finds "that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions." *Id.* In the end, a finding of superiority will not compensate for a lack of predominance, and the existence of problems with regard to manageability can only scuttle an otherwise proper motion for certification after predominance has already been shown. *Sacred Heart Health Sys.*, 601 F.3d at 1184 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). This Court has grave concerns regarding the manageability of this suit as a class action, specifically the claim by claim review that will undoubtedly be needed.

In *Gibbs Properties Corp. v. Cigna Corp.*, 196 F.R.D. 430, 433 (M.D. Fla. 2000), Plaintiffs were three Florida corporations which purchased various commercial insurance packages from Defendants Cigna Fire Underwriters Insurance Co. ("Cigna Fire"), Bankers Standard Insurance Company ("Bankers"), Insurance Company of North America ("INA"), and Pacific Employers Insurance Company ("Pacific"), insurance companies which are all owned by Defendant Cigna Corporation. The crux of Plaintiffs' Complaint was that Defendants purported to sell insurance to Plaintiffs in accordance with rates and schedules filed with the Florida Department of Insurance ("FDOI") but, in fact, instituted various policies and procedures whereby Defendants would illegally and improperly inflate the premiums and collect such excessive premiums. *Id.* Defendants claimed that individual "mini-trials" would be necessary for each class member in order to determine damages. *Id.* at 441. Plaintiffs countered by arguing that their class certification expert anticipated being able to use a formula in order to calculate damages for the class. Nevertheless, the court found that materials submitted by the named Plaintiffs showed that the amount of damages, if any, varied from class member to class member. *Id.* Because the

21

Court would have to analyze each individual class member's underwriting file in order to calculate damages, the *Gibbs* Court ultimately found that such a task makes management of a class action suit unworkable as it pertains to damages. The motion for class certification in *Gibbs* was denied. *Id.* at 443.

In the instant case, such an individualized examination of each policy holder's estimate would also be required. Foremost expressed such a concern in their motion opposing class certification by arguing that certification would ultimately result in seventeen thousand and three hundred (17,300) mini-trials. (Dkt. 190 P. 33) The Millses' purported expert witness, Kermith Sonnier, himself had to examine, file by file, each claim in order estimate the number of potential class members. According to Sonnier's declaration, he reviewed only four hundred and twenty claim files (420), averaging one hundred and fifty (150) pages or more and each page of the claim file was formatted individually in no specific order. (Dkt. 156-3, P.3). Sonnier originally analyzed five hundred (500) claims; however, according to his affidavit he inadvertently duplicated eighty (80) files thus resulting in the current claim sample size of four hundred and twenty (420). Although the Millses argue that such claim analysis is manageable, Sonnier advised Plaintiff's counsel that more time would be needed because of the described difficulties and incompatibility of computer systems. (Dkt. 156-3 P.4) Furthermore, Sonnier still hasn't produced a statically sound analysis of the claims files. Sonnier's statistical analysis pertaining to the Millses Motion for Class Certification, contained duplicate claim files. Attached to the Millses Opposition to Strike the Declaration of Sonnier, Sonnier provided new spreadsheet analysis regarding the claim files but failed to correct his initial faulty analysis (Dkt. 156-4, P.5). Specifically, the duplicate claim files were still contained therein. Following his second flawed analysis, Sonnier attached a declaration to the Millses' Notice of Filing regarding exhibits (Dkt. 188-1) becoming part of the record from the July, 8th, 2010 *Daubert* hearing. Within his declaration, Sonnier offers a very similar excuse to that given for his initial errors and attaches a "corrected" spreadsheet analysis and summary. Now on this third attempt to correct his analysis, Sonnier states, "Since receiving Foremost's Motion, we have reviewed all of the original claim files included in the Spreadsheet analysis previously filed with the Court and removed duplicates

and made necessary correction to the Spreadsheet Analysis and Summary. We have now prepared a new spreadsheet in respect of the remaining four hundred and twenty (420) claim files, and are prepared to complete the analysis of all two thousand (2000) Foremost claim files if the Court requires it and allow us sufficient time to complete the analysis." (Dkt 188-1, P.4). At a mere cursory glance, this Court has found an error contained within Sonnier's **third** spreadsheet analysis and summary.

Sonnier attempts to summarize his findings within the claims in a one page document entitled, Summary of Analysis of 420 Sample Foremost Claims. (Dkt. 188-3). The summary has three columns across a horizontal axis. The column on the far left margin creates a set of claims in which three trades or more were present, thus creating a second subset of claims in column two. Column two then illustrates if three trades or more were present, how many files of the four hundred and twenty (420) Foremost paid GCOP and those claims in which Foremost did not pay GCOP. Specifically, Sonnier details in column one the number of Foremost claims with less than three trades as thirty three (33). He then lists one of two subsets of column one in column two as the number of claims with less than three trades in which Foremost paid GCOP. Sonnier summarizes that of the four hundred and twenty (420) claims analyzed, thirty three (33) had less than three trades, and of those thirty three (33) claims of three trades or less, Foremost did not pay GCOP on sixty three (63) claims. Such a finding is mathematically impossible. Thus, upon **three** attempts to cure his analysis of all errors, errors still remain.

While the Millses have maintained that forensic accounting will make this class manageable, the record reflects differently. It appears Sonnier himself resorted to claim by claim analysis in order to produce the summary of only four hundred and twenty (420) claims. After **three** attempts Sonnier still could not accurately summarize the data found within the claims in order to readily ascertain the amount of claims in which three trades were involved, and of those, how many claims Foremost did not pay GCOP. Taking the Millses estimate as accurate regarding numerosity, twelve thousand eight hundred and fifty (12,580) claims remain that must still be analyzed, in addition to the four hundred and twenty (420) sample claims in which Sonnier cannot seem to provide this Court with sound mathematical data. If

Sonnier and his assistants were unable to properly breakdown four hundred and twenty (420) claims into clearly ascertainable groups, this Court has a grim outlook in terms of the manageability of the class moving forward. In addition, this Court is not convinced that it remains possible to certify the class without claim by claim analysis. As stated above, it appears Sonnier and his assistants were forced to resort to claim by claim analysis in order to develop the summary of analysis regarding the four hundred and twenty (420) Foremost claims. Sonnier stated that while each claim file averaged one hundred and fifty (150) pages, he was forced to reformat the claims into a PDF format, assemble hard copies into "paper files", and then distribute these to this team of adjusters so the complete file could be analyzed. Dkt. 156-3. Thus, it appears that the Millses' own expert resorted to individualized claim to claim analysis.

Also, the court in determining manageability should consider the potential difficulties in notifying class members of the suit, calculation of individual damages, and distribution of damages. *Maguire v. Sandy Mac, Inc.*, 145 F.R.D. 50 (D. N.J. 1992). Thus, even assuming this Court would apply a "three trades rule," the calculation of damages is not readily apparent and applying the Eleventh Circuit reasonably likely standard will surely only make the calculation of damages more difficult as individual inquires for each claimant must be made in order to determine what was reasonably likely under the circumstances. A reasonably likely standard will only demand a more thorough claim file analysis as the determination of whether or not something is reasonably likely remains quite fluid. Sonnier's analysis was based on a "three trades rule" theory of liability, not the reasonably likely standard set forth by the Eleventh Circuit in *Mills*. The calculation of individual damages in the instant case makes this class unworkable from a manageability standpoint, as each claimant's estimate must be examined to determine whether or not a general contractor would have been reasonably likely to be needed in the repair or replacement of the insureds covered mobile home.

Furthermore, Foremost may raise defenses that are founded on an individual basis, as their motion opposing class certification indicates. Therefore, taking the Millses allegations and reasoning as

24

true, that the payment of GCOP is easily calculated by multiplying the actual cash payment by the going rate for GCOP, twenty percent (20%), problems still abound. As GCOP would be calculated as a percentage of the actual cash value payment made to the class members, GCOP cannot be viewed distinct from all other decisions that comprised the determination of Foremost not to pay GCOP. The Millses' supplemental claims provide an excellent example. The Millses filed two (2) additional claims for damage to their home resulting from the 2004 Florida Hurricanes and Foremost would be entitled to introduce evidence regarding the calculation of GCOP given the supplemental claims. The possibility that the supplemental claims paid by Foremost include sufficient funds for the hire of a general contractor in the repair or replacement of the insureds home remains a quite viable defense, and one that can only be determined on an individual basis, and only through claim by claim analysis.

In concluding with superiority, the plaintiffs appear to have a viable avenue to recover costs and fees against Foremost if they so chose to proceed forwards with a state cause of action, further attenuating class wide treatment as compared to individual actions. Fla. Stat §627.428 provides, "Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had." The Millses argue that, few, if any, experienced attorneys would take the case on an individual basis despite Fla. Stat. §627.428. "Thus, there is no evidence that the availability of statutory fees and costs would provide *any incentive* for attorneys to represent individual policyholders in this case," (Dkt. 116, p.34) (emphasis original). The Millses' argument is in a word, wrong. (*See, e.g., Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684 (Fla. 2d DCA 2008) (individual action addressing payment of GCOP on a hurricane claim after an appraisal); *State Farm Fla. Ins. Co. v. Lorenzo*, 969 So. 2d 393 (Fla. 5th DCA 2007) (individual action against insurer for wrongful exclusion of GCOP).

Upon further examination of the Rule 23 factors that this Court is to examine for a (b)(3) class type, Rule 23(b)(3)(A) states, "the class members' interests in individually controlling the prosecution or defense in separate actions." Given the individualized inquiries and proof that will be necessary to litigate the class members' claims, the interest of individually controlling the litigation in separate actions is found. Furthermore, under Rule 23(b)(3)(C) this Court is to also consider, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." While it may be argued that this Court is the proper forum as it has already handled several substantive matters, the reality is that this class simply cannot move forward as a class action simply due to past handlings of substantive matters. The difficulties in manageability alone under Rule 23(b)(3)(D) makes this class uncertifiable. For all of the above reasons superiority has not been met under Rule 23(b)(3).

    c.  **Class Definition**

Also giving rise to concern is the lack of definiteness created by the proposed class definition. Inherent in the proposed class definition is the individualized inquiry as to whether or not a general contractor was reasonably likely to be required in the repair or replacement of the claimants' covered property loss. Referring back to *Gibbs*, the Court there was faced with a proposed class and ruled against class certification. In *Gibbs*, the plaintiffs sought to certify a class consisting of all persons (i) who reside or do business in the State of Florida, (ii) who purchased or renewed either a commercial general liability policy (monoline or package) or commercial automobile policy from any of the Defendants from January 1, 1990 through December 31, 1992, and (iii) who were charged a premium inconsistent with the applicable rates, as modified by the misapplication of Defendants' schedule rating plan, under Florida law. *Gibbs* at 442. The plaintiffs in *Gibbs* argued that a list of all insureds who received a schedule debit during the class period could be computer-generated by the Defendants. *Id.* "Nevertheless, the definition—as currently stated—would require the Court to sift through the tens of thousands of underwriting files of those insureds who received schedule debits in order to determine which files do not contain sufficient justification for the schedule debits. Admittedly, the Court is not well enough versed in

insurance underwriting to quickly determine at a glance whether a schedule debit is justified by the documents in the file. Moreover, whether a schedule debit is justified by documents in the underwriting file would seem to be a question of fact for a jury to decide." (*Id.*). This Court finds that whether a general contractor was reasonably likely to be needed in the repair or replacement of the insureds covered loss to require in depth, claim by claim analysis, and like *Gibbs*, to answer a question on a class wide basis would remove the jury's role in the adjudicative process. The Millses even admit in their Motion for Class Certification that a question of "reasonably likely" is one for a jury and this Court has found the same to be true previously in our order on summary judgment. This Court remains perplexed as to why the Millses have placed a reasonably likely standard in their class definition, argue a "three trades rule" should apply, and fail to mention a "three trades rule" anywhere within their class definition.

The Millses base their motion for class certification on a "three trades rule" theory to establish liability as it pertains to Foremost. However, the class definition applies the reasonably likely standard set forth by the Eleventh Circuit. As the class definition currently stands, it would require this Court to sift through thousands of claims files in order to determine whether or not overhead and profit were reasonably likely to be needed in the repair or replacement of the covered loss, which as stated ultimately appears to be a question of fact for a jury. Taking the Millses' Numerosity argument as true, short of conducting over thirteen thousand (13,000) individual trials, based on each individual claimant's estimate, and each individual defense Foremost will likely raise, this action simply is unmanageable. As set forth by Rule 23(b)(3)(D), "The matter pertinent to these findings include: the likely difficulties in managing a class action."

Even if this Court were to appoint a committee to oversee the review of all claim files in the hope of alleviating manageability issues in the instant case, as the Eleventh Circuit has made clear, the standard is whether or not it is reasonably likely that a general contractor would be needed in the repair or replacement of the covered loss. To allow a committee to determine whether or not a general contractor being needed was reasonably likely is ultimately allowing expert witnesses to play the role of jurors,

27

something this Court will not allow. The Court in *Gibbs* felt the appointment of several expert witnesses or an expert master to review the underwriting was also potentially dangerous. "Presumably, the defendants— and perhaps even the Plaintiffs— would want to cross-examine these people on, for example, methodology. Once again, then, this suit would turn into an individual examination of 40,000 underwriting files." *Gibbs* at 442. Understanding that the same may be true in the instant case, that Foremost would want to discuss the manner in which a committee reached their conclusion that a general contractor was reasonably likely to be needed to repair or replace a class members' mobile home, the existence is likely of individual inquiries pertaining to each individual claimant. In light of the facts and proposed class definition before this Court, this Court finds the existence of individual inquiries to create manageability issues so great as to hinder an effective resolution of the action.

<u>Conclusion</u>

This Court has concluded that the motion for class certification must be denied. Furthermore, this Court rules that class certification is not proper under any of the class types found within Rule 23(b). Specifically, this Court finds certification under Rule (b)(3) to be improper as class lacks predominance and superiority. The determination of whether an insured were reasonably likely to need a general contractor in the repair or replacement of their covered mobile home cannot be made on a class-wide basis, and even if such a determination could be made on a class-wide basis, individualized proof would be necessary to do so, making the class unmanageable.

28

Accordingly, it is:

ORDERED that the Plaintiffs', DALE J. MILLS and C. DIANE MILLS, Motion for Class Certification and Memorandum of Law in Support (Dkt. 116) be DENIED. It is now for the Millses and those similarly situated to determine if they intend to continue the case on an individual basis and must notify the court of the same.

The denial of class certification renders moot Foremost's Motion for Reconsideration from this Courts order on Foremost's Motion to Stay Case Pending Final Approval of a Nationwide Class Action Settlement Agreement and Supporting Memorandum of Law.

This case was removed to this Court based on pursuit of a class designation. This Court now questions whether there is any longer sufficient diversity jurisdiction to allow the case to remain. The parties have then (10) days to establish that this case should not be remanded to state court. Otherwise, this Court will order the remand.

DONE AND ORDERED in Chambers at Tampa, Florida, this 29th day of September, 2010.


ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.